[No. 9044.   Department Two.   December 7, 1910.]

## E. G. COOK, *Respondent*, v. DANAHER LUMBER COMPANY, *Appellant*.[1]

MASTER AND SERVANT—ASSUMPTION OF RISKS—FACTORY ACT—QUESTION FOR JURY. Under the factory act of 1905, requiring a mill owner to guard machinery where the employee is liable to come in contact with it in the performance of his duty, the defense of assumption of risks does not apply unless the court can say, as a matter of law, that the employee was not in the performance of duty when he came in contact with an unguarded shaft; and this the court cannot do, where there was a conflict in the testimony as to whether an employee, injured on an unguarded shaft, had to reach over the shaft in order to clean up and remove sticks from a conveyor chain.

SAME—QUESTION FOR COURT. Assumption of risks, under the factory act should be withdrawn from the jury, where reasonable minds cannot differ as to the master's failure to comply with the act.

SAME—GUARDING MACHINERY—FACTORY ACT—APPLICATION. The factory act requiring machinery to be guarded is not limited to employees working with the machine, but applies to any employee whose work makes it possible for him to be injured.

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—EVIDENCE—QUESTION FOR JURY. One employed to clean up in a mill and keep a conveyor chain clear is not guilty of contributory negligence, as a matter of law, in reaching over a shaft three feet high to clear the chain, where, under his testimony, the shaft was always in motion when he was about it, making his knowledge of the key-seat on the shaft a question for the jury.

SAME—UNSAFE METHODS OF WORK—INSTRUCTIONS. Where the court has defined the issues and submitted the law of choice between places to work, it is not error to instruct in the abstract as to the servant's duty to adopt the safer way, and to refuse an instruction based upon the concrete facts of the case.

SAME—DUE CARE—TEST—INSTRUCTIONS. It is not prejudicial error to make the test of due care the conduct of an "ordinarily prudent man," where it does not stand alone, the jury being told to compare what was done with what would be done by a man acting with ordinary prudence, also considering all the evidence throwing light upon the man's knowledge and intelligence.

[1] Reported in 112 Pac. 245.

DAMAGES—PERSONAL INJURIES—EARNING CAPACITY. The measure of damages for impaired earning capacity is the difference before and after the accident, and also the use màde of it.

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS—DAMAGES—EARNING CAPACITY. An instruction as to plaintiff's impaired earning capacity, is not prejudicial error, where the sum awarded was probably limited by the maximum recovery allowed by statute, and no other jury would likely give a less sum.

TRIAL—PERSONAL INJURIES—EXHIBITION OF PERSON—EVIDENCE. An indecent exposure of the person of plaintiff in a personal injury case, calculated to arouse the prejudices of the jury, is not ground for reversal if within the *res gestae* of the case.

Appeal from a judgment of the superior court for Pierce county, Shackleford, J., entered February 24, 1910, upon the verdict of a jury rendered in favor of the plaintiff, for personal injuries sustained by an employee in a mill. Affirmed.

*Hudson & Holt*, for appellant.

*Govnor Teats, Hugo Metzler*, and *Leo Teats*, for respondent.

CHADWICK, J.—Plaintiff was employed by defendant in the work of cleaning up on a part of the lower floor of a sawmill owned and operated by the defendant. He worked within certain defined limits, and his duty was to clean up all sawdust and waste as it accumulated about the machinery, and push or carry it to a conveyor chain which carried the trash away. Plaintiff had been employed about sawmills for some time, but had not directed the movement of any machinery. He had worked for defendant about four months when the accident occurred. In the zone of plaintiff's employment, there was a shaft about four feet long, which operated a pulley. Behind or east of it, the space was limited; possibly so much so that appellant could not use the long-handled scrapers which he was accustomed to use when working at his usual place of employment, which was to the west of the shaft. The space to the west was comparatively open, and the duties of plaintiff involved no particular danger.

About two weeks before the accident, the installation of a sprinkler system was inaugurated by defendant.     Those engaged in this work created a different condition in the surroundings, in this: they put pulleys on another shaft further to the west, set up two work benches with pipe cutting machines and a threader in close proximity to the place where plaintiff was accustomed to push the waste on the conveyor chain; the pipe when cut into proper lengths was put on the floor in the space usually occupied by plaintiff; a guard was also taken off the shaft upon which plaintiff was injured. The conveyor chain returned out of a box or guide, and it was not unusual for short boards to come out of the conveyor box. If they were carried on top of the chain, they would fall to the floor of their own weight; but at times they would lodge under the chain when, if carried into the bull wheel or sprocket, they might break the chain, causing it to "pile up."     Plaintiff, being on the east side of the unguarded shaft which had an exposed key-seat running its full length, observed a length of edging protruding from the conveyor but held under the chain.     This shaft was about waist high to a man of ordinary height, and the chain, according to defendant's testimony, was about forty-two inches from the shaft; while plaintiff's testimony shows that it was less than three feet.     Plaintiff leaned over the shaft to reach the edging and pull it out, when his jumper coat caught on the shaft, his clothing was stripped from his body, his arm was broken so that amputation followed, one of his legs was so injured that he complains that it will be permanent, and his private members were so torn and lacerated as to materially interfere with, if not entirely destroy, some of their material functions.     Defendant set up the usual defenses of assumption of risk and contributory negligence.     From a judgment in favor of the plaintiff, defendant has appealed.

The complaint is based upon the factory act.     In pursuance of that theory, the court instructed the jury as follows:

"In this case the defense of the assumption of risk set up in defendant's third affirmative defense in its answer, has no application and you will disregard that defense. It will be your duty in this case to bring in a verdict for the plaintiff, unless it appears from a fair preponderance of the evidence that the plaintiff was guilty of negligence which contributed to and was one of the causes of his injury. The burden rests upon the defendant to prove contributory negligence by a fair preponderance of the evidence."

It is contended that this is an instruction on the weight of the evidence. Our attention is called to the fact that the factory act of 1905 differs from the act of 1903, in that a mill-owner is not required to guard his machinery unless the employee is liable to come in contact with it in the performance of his duty; and hence, respondent being under no duty to be on the side of the shaft opposite the conveyor, there was no duty imposed upon appellant, and the recovery should have been denied on the ground of assumption of risk. To so rule would require us to hold, as a matter of law, that respondent was not engaged in the performance of his duty when injured; that is, that having put himself in an unusual and unnecessary position and having reached over the shaft in such manner as to make it evident that he had gone beyond his duty in utter disregard of his own safety, he cannot be heard to claim the benefit of the factory act. The factory act was passed in obedience to the commonest instincts of humanity, and should not be construed so as to defeat its intent, except in a plain case. For two weeks, or at least while the pipe fitters were at work on the lower floor of the mill, respondent had performed a certain part of his work when upon the east side of the shaft. He testified that he had reached over, as he did in this instance, a number of times without injury. It is true that, if the testimony showed that the conveyor chain was so far beyond respondent's reach that the legal conclusion followed that he had voluntarily abandoned the path of duty, it might be so held. But the evidence is conflicting on this point. It was respondent's duty

to clean up, and he was expected, if he saw scraps of boards in the conveyor, to remove them. This duty, taken in connection with the fact that the jury must have found his usual place of work to be obstructed, in some degree at least, by the pipe men, and the further fact that a model or rather reconstruction of the place where respondent was injured was exhibited to the jury, allowing them to test with their own eyes and senses the conflict of testimony as to the distance from the shaft to the conveyor chain, was enough to sustain the verdict upon this point. Under this state of facts, we do not think the court erred in saying to the jury that respondent was bound under the factory act. The shaft was in the open, and an employee would not have to reach for it or climb over other machinery to come in contact with it; yet he was liable to come in contact with it in the performance of his admitted duty.

In some cases the court might hold that the servant could not recover as a matter of law, or in doubtful cases he might submit the question of fact to the jury. But where the situation is such that reasonable minds could not differ, it is the duty of the court to withhold the question of compliance with the factory act from the jury and decide it as a matter of law. Liability to injury by coming in contact with unguarded machinery does not mean that an employee must be working with the machinery. It is enough that, in the performance of such work as he has to do, it is possible for him to be injured. We think these principles are covered by the case of *Hall v. West & Slade Mill Co.*, 39 Wash. 447, 81 Pac. 915, and the cases collected under Rem. & Bal. Code, § 6587.

Nor do we think that respondent is to be held guilty of negligence as a matter of law. He was in the performance of his duty. He, as men of ordinary understanding and common prudence will do at times, obeyed the impulse of his mind to reach over and clear the chain. He had done the same thing before, and while custom will not excuse negligence, we cannot say that his act was so in disregard of the duty a person

owes to himself as to bring him within the rule of contributory negligence when, as in this case, the factory act controls and the accident would not have happened but for its violation.

It is insisted that the key-seat on the shaft was in plain view, and was in itself a warning of danger. Whether respondent knew of the key-seat or could see it, the machinery, according to his testimony, being always in motion when he was about it, was a question for the jury.

Error is also predicated on the refusal of the court to instruct upon the doctrine of a safe and unsafe way of doing the work. It is complained that the court refused the instruction based upon the concrete facts of the case, and in lieu thereof submitted only the abstract proposition of law that, "if there were two ways and neither one was safe and one was safer than the other, it was a question for the jury, if they were equally available and speedy." It is true that, as a general proposition, a court should not instruct in the abstract; but whether an instruction is to be so considered must be determined by reference to the evidence as well as the instructions as a whole. The court had defined the issues and submitted the defense of a choice between places to work, and it was not error to follow it with the abstract law covering the issue as defined.

It is complained, also, that the court instructed the jury that the test of due care was the conduct of an "ordinarily prudent man." If this stood alone, it might be prejudicial, for an ordinarily prudent man might act recklessly at times. But the whole instruction given by the court cannot be held to be prejudicial, for the premise of the instruction is, "the way to determine whether the plaintiff was negligent or not is to compare what was done by him with what would have been done by a man acting with ordinary prudence;" and its conclusion is:

"In determining whether plaintiff was guilty of contributory negligence you should consider all of the facts shown by the evidence including the evidence throwing light upon the

age and experience and knowledge and intelligence and opportunity for knowledge of the plaintiff."

It is urged that the court erred in refusing to instruct the jury as follows:

"You are instructed, gentlemen of the jury, that in determining the extent to which the earning capacity of the plaintiff has been impaired by his injuries, you may take into consideration, if you see fit, what he has been earning in the immediate past and the probabilities of what his earnings would have been in the future if he had not received his injury; and in this connection, you may consider the physical condition of the plaintiff at the time of his injury and what it would have been but for his injury."

This request, more specific than the general charge of the court, embodied a correct statement of the law, and might well have been given. The measure of damages for loss or impairment of earning capacity is the difference between the earning capacity before and after the accident, and this depends not only on the actual earning capacity, but on the use made of it. However, it would seem that a jury of average intelligence would understand this without explicit instructions from the court. In any event, we do not think the failure to give the instruction was prejudicial in this case. The verdict of $7,500 doubtless finds its limitation in the statute fixing the maximum recovery in that sum, rather than in the testimony. If the respondent is entitled to recover at all—and the verdict establishes that fact in his favor—the character and extent of his injuries were such that there is no probability that another jury would return a verdict for a less sum.

Finally, it is claimed as error that the court permitted the plaintiff to expose his person before the court and jury; that the exhibition was indecent, and calculated to arouse the prejudices and passions of the jury. This point has been but recently decided by this court adversely to the contention of the appellant. *Dunkin v. Hoquiam*, 56 Wash. 47, 105 Pac. 149. While such exhibitions are not to be encouraged as a

general thing, the only safe rule is to leave such requests to the discretion of the trial judge, and if within the *res gestae* of the case, his decision will not be held to be prejudicial error.

Finding no reversible error, the judgment is affirmed.

RUDKIN, C. J., DUNBAR, and CROW, JJ., concur.