# CHARLESTON.

## McClary v. Knight.

Submitted December 2, 1913.   Decided December 9, 1913.

1. Master and Servant—*Injury to Servant—Assumption of Risk.*
   To charge a master with liability to a servant for injury sustained by the latter in the execution of an express direction or command of the former, it is necessary to allege the servant's ignorance of the danger incident to the performance of the act.   (p. 387).

2. Same—*Duty of Master—Safe Appliances.*
   A steam laundry is a place of employment of labor within the meaning of section 1 of chapter 19 of the Acts of 1901, serial section No. 442 of the Code of 1906, imposing upon employers of labor the duty to guard dangerous machinery.   (p. 388).

3. Same—*Safe Appliances—Construction of Statute.*
   In the interpretation of said statute, the rule *ejusdem generis* does not apply so as to exonerate a master from the duty to guard dangerous complete machines and limit it to the particular parts of machines specified, beltings, gearings, shaftings, drums and elevators. (p. 389).

4. Same—*Safe Appliances—Guards for Machinery—Duty of Master.*
   The duty imposed by the statute is to provide against such injury as is reasonably to be apprehended or foreseen as being in the line of

probability, whether the result of accident or inadvertence on the part of the servant.   (p. 391).

5.   SAME—*Injury to Servant—Failure to Guard Machinery—Antici-pated Injury—Question for Jury.*

Whether an injury resulting from failure to guard a machine or part of a machine was such as should have been anticipated, is a question for the jury, unless the evidence makes the existence or non-existence of the danger so clear and certain as to leave no room for difference of opinion as to it in the minds of reasonable men.   (p. 391).

6.   SAME—*Injury to Servant—Question for Jury—Evidence.*

When the evidence leaves it doubtful whether the injured servant was acting within the line of his ordinary duty, at the time of the injury, the question is one for jury determination.   (p. 391).

7.   SAME—*Injury to Servant—Failure to Guard Machinery—Defenses Available—Assumption of Risk.*

In an action for an injury caused by the failure of an employer to guard a dangerous machine, the defense of assumption of risk on the part of the servant cannot be made.   (p. 395).

8.   SAME—*Injury to Servant—Failure to Guard Machinery—Defenses Available—Contributory Negligence.*

In such cases, the statute does not eliminate contributory negligence as a ground of defense.   (p. 396).

Error to Circuit Court, Cabell County.

Action by T. A. McClary against Louis C. Knight.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Holt, Duncan & Holt,* for plaintiff in error.

*Neal & Strickling* and *Switzer & Wiatt,* for defendant in error.

POFFENBARGER, PRESIDENT:

On a demurrer to the evidence, proving injury to the plaintiff in consequence of his having fallen, or been thrown, into a rapidly revolving machine, called a "wringer" or "extractor", while working in the defendant's steam laundry, the court rendered a judgment in his favor for the sum of $800.00.

An assignment of error is founded upon the overruling of the general demurrer to the original and amended declara-

tions.   The former consists of one count only, charging the defendant with negligence in the giving of a direction and command to perform the act in the course of which the plaintiff was injured.   He was employed to run the engine and washers in the laundry.   The declaration avers the babbitt metal in one of the journals of one of the washing machines was so disordered from some cause as to interfere with the oiling of the journal.   On the morning of the injury, the plaintiff had oiled all the machinery as best he could before it was started.   Soon afterwards the defendant came in, and, detecting a noise made by one of the washing machines, directed the plaintiff to oil it.   He protested he had oiled it, but was commanded nevertheless to oil it again.   Proceeding to do so, he threw off the belts running the machine, for that purpose, and stopped it.   Having oiled the journals, he endeavored to replace the belts on the pulleys on the line shaft overhead, for which purpose it became necessary for him to get on top of the washing machine, near which stood the running wringer or extractor.   While putting on the last one of the two belts, the other one caught his sleeve and began to draw him into the wheel on the shaft, and, in breaking away, or having been thrown away, he fell so that his left leg went into the extractor and was badly crushed in consequence of which amputation was necessary.

The gist of this count is the alleged wrongful command in the execution of which the plaintiff suffered his injury.   Many authorities say a direction or command of a master to his servant to do an act by which the latter is injured may be held to have misled and impelled him to encounter the danger, and, on that ground, to have relieved him from the common law bar of right of action by assumption of the risk.   Labatt Mast. & Serv., sec. 1362.   But the declaration founded upon negligence in commanding the doing of a dangerous act should aver the plaintiff's ignorance of the danger.   A direction or command to do that which is obviously dangerous need not be obeyed and, in obeying it, the servant assumes the risk.   *Chandler* v. *Car & Foundry Co.*, 69 W. Va. 391.   Hence to make such a command a wrongful act on the part of the master, imposing liability for injury in obedience thereof, must be a command and direction to do an act the danger of

which the servant does not know, or one not obviously danger-
ous. Without the averment of such ignorance no cause of
action is shown. To make a cause of action, the allegation
must take the act out of the class within which it falls by law
in the absence of special circumstances. This ruling does not
require the pleader to negative or anticipate a ground of
defense, such as contributory negilgence. The ignorance to
be averred is a fact essential to right of recovery for injury
incurred in obeying an express command. The command or
direction is relied upon as taking the act done out of the
general rule, barring the action by assumption of risk, and it
does not take it out except in the case of ignorance of the
danger.

The gravamen of the second count of the amended declara-
tion is failure to guard the wringer or extractor or provide a
cover of some sort for it. It avers the duty to guard the
machinery, belting and gearings for the safety of the em-
ployees and omission thereof, and then sets forth the circum-
stances and cause of the injury, the attempt to replace the
belt on the pulley, the entanglement with the belt and the
consequent fall into the open and unguarded wringer. The
statute, section 1 of chapter 19 of the Acts of 1901, serial
section 442 of the Code of 1906, requiring the machinery, belt-
ing, shaftings, gearings, drums and elevators in all manu-
facturing, mechanical and other establishments, so arranged
and placed as to be dangerous to persons employed therein,
while engaged in their ordinary duties, to be safely and
securely guarded, if possible. The laundry was an establish-
ment in which machinery, belting and gearings were used and
so arranged, according to the averments of the declaration, as
to be dangerous to persons employed therein.

All of these words must be considered upon the inquiry as
to the kind of establishments brought within the purview of
the statute. A steam laundry may not be a manufacturing
establishment, but it is mechanical in the sense that it is
filled with running machinery. Whether this is the sense in
which the word "mechanical" was used or not, such a
laundry is an establishment "where the machinery, belting,
shaftings, gearings, drums and elevators" are so arranged and
placed as to be dangerous to persons employed therein.

Moreover, the words "manufacturing" and "mechanical" are merely descriptive. The principal word indicating the subjects of the enactment is "establishments", and its scope is defined both by the preceding adjectives and the following descriptive clause: "Where the machinery, belting, shafting, gearing, drums and elevators are so arranged" &c.

In some jurisdictions, the rule *ejusdem generis* has been invoked in the effort to narrow the requirements of such statutes to the particular parts of factories and mills specified in the act, and the general term "machinery" has been treated as meaning only parts of machinery like those specifically named. The form of expression here, however, is not that usually found in clauses deemed to be within that rule. "Machinery" does not follow the words, "belting, shafting, gearing, drums and elevators". It precedes them and is one of the things enumerated, one of the things specifically mentioned by the statute as falling within its requirements. Of course all machinery, belting, shaftings, gearing, drums and elevators are not required to be guarded, but only so far, and such parts of them, as to make them safe. Under a statute in which the word "machinery" follows, instead of preceding, the enumerated parts of machines to be guarded, the better view is that the rule does not apply. *Cement Co.* v. *Cooper,* 172 Ind. 599; *Steel Co.* v. *Kachwinske,* 80 C. C. A. 571; *Pein* v. *Miznerr,* 41 Ind. App. 225; *Ward* v. *Lumber Co.,* 54 Wash. 304; *Davis* v. *Langdon,* 11 New So. Wales St. Rep. 149; Labatt Mast. & Serv., sec. 1856.

Under these principles and conclusions, the original declaration and the first count of the amended one are clearly insufficient, and the second count of the amended declaration good; wherefore the demurrer, being general, was properly overruled.

The facts the evidence proves and tends to prove are as follows: This laundry was operated by a steam engine. The boiler and engine were located in one end of the building, partially separated by partitions from that part of the room in which the washing machines and extractors or wringers were located, and the power with which to operate the washing machines, extractors and other machinery was transmitted from the engine by a line shaft located near the ceiling,

extending along the east side of the room above the washing machines, extractors and other machinery, upon which there were pulleys to place belts on, and thus apply the power to the washing machines, extractors and other machinery. Nearly under this line shaft along the east side of the building was a row of washing machines, being barrel shaped arrangements, set upon the floor; and near the middle of the room, and with a washing machine between it and the east wall of the building, was the wringer or extractor in which the plaintiff was injured. It consisted of a cast-iron hull supported by legs resting on the floor, with an open top eighteen inches in diameter, forty-two or forty-three inches from the floor, and was entirely closed, except as to the top. Inside of this hull was a basket intended as a receptacle for the wet clothes, and which was caused to revolve at the rate of fourteen hundred and fifty revolutions per minute, and thus withdraw the water by centrifugal force. It was located about thirty feet from the engine, and only about ten inches from one of the washing machines and could be stopped by pushing a lever.

The plaintiff, a man twenty-two years old, had been employed in the laundry practically all the time for a period of four years, as tender of the boiler, engine and washing machines. On the morning of the accident, he was directed by the defendant to oil the washing machine located between the extractor and the east wall of the building, and, without slowing down the machinery or stopping the same, he threw the belt connecting the pulley on the line shaft with the washing machine off the pulley, thus stopping the washer, and attempted to oil the same. After doing this and without slowing down the engine or stopping the same, or stopping the operation of the wringer, he climbed on top of the washing machine located near the wringer, but six inches higher, while the wringer was running and the line shaft revolving at pull speed, and attempted to replace the belt connected with the washing machine upon the pulley fastened to the line shaft, and, in making such attempt, his clothes caught on the line shaft or pulley, which was revolving very rapidly, and when he broke loose from the same he fell into the wringer. He knew, when he climbed on top of the washing machine,

the extractor was in operation very near and below him, and also that the line shaft was revolving rapidly. He also knew that about two months before he was hurt a fellow employee had his clothes caught on the line shaft and stripped from him while attempting to oil the pulley thereon when the shaft was revolving, and had been thrown to the floor near the extractor. To oil the pulleys and bearings of the line shaft and place the belts on its pulleys, it was necessary to get on the washing machines or some other support, such as a ladder. The plaintiff was not allowed to stop the engine without permission of other employees using machines on the second floor and he was not in control of the extractor or wringer, but it seems he was permitted to slow the engine down, when necessary.

The remaining inquiries, arising upon the facts disclosed by the evidence, are (1) whether the machine was such as should have been guarded; (2) if so, whether the plaintiff, having knowledge of the defendant's omission of duty, assumed the risk of injury, incident to his service in close proximity to it; and (3) whether, as a matter of law, his right of action is barred by contributory negligence.

Prescribing no certain, definite or exact standard or test by which to determine whether a piece of machinery is such, by reason of its character and relation to the places of work and duties of servants, as to impose upon the master duty to equip it with a guard or fender for their protection, the statute devolves upon the court and jury the solution of that question by the uncertain and indefinite criterion it sets up, danger to persons employed in the establishment, while engaged in their ordinary duties. In those instances in which the admitted or clearly established facts make the danger so certain and obvious as to leave no room for a difference of opinion about it in the minds of reasonable men, the courts may declare the duty in the particular case as matter of law. The statute imposes a legal duty, when there is such danger as it contemplates, wherefore, if the danger is indisputable, the court, in declaring the duty, does no more than enforce the law evidenced by the statute. Conversely there are many cases in which the courts may say, as matter of law, the master is under no duty to guard a particular piece of

machinery. But there are many instances in which the facts admitted or established by proof leave it uncertain whether the element of danger, contemplated by the law, exists; and there are many others in which the evidence, as to its existence, is conflicting. In all these, the evidence raises a question of fact for jury determination, in the solution of which the jury necessarily determines the question of duty on the part of the master. *Snyder* v. *Box Board Co.,* 110 Minn. 40; *Chopin* v. *Paper Co.,* 134 Wis. 35; *Meiferl* v. *Sand Co.,* 124 Mo. App. 491; *Klotz* v. *Machinery Co.,* 136 Wis. 107; *Kreider* v. *Paper & Pulp Co.,* 110 Wis. 645; *Klall* v. *Lumber Co.,* 97 Wis. 641; *Portland Cement Co.* v. *Insurance Co.,* 162 N. Y. 399; *Martin* v. *Manufacturing Co.,* 198 N. Y. 324; *Cook* v. *Lumber Co.,* 61 Wash. 118; *Strode* v. *Box Co.,* 124 Mo. App. 511; Labatt Mast. & Serv., sec. 1856, p. 5979.

Whether the facts make the question one for decision by the court or the jury, the inquiry involves the character of the machine, or part of the machine, in question, its relation to the places of work and duties of the servant and the capacity in which the servant was acting at the time of the injury, and these facts must be considered in the light of the purpose of the statute. It was not the design of the legislature to make employers guarantee safety of their servants. The general duty imposed is to make reasonable provision for their safety in the manner prescribed. From this it necessarily results that there is no duty to provide protection, unless there was reasonable ground for anticipation of injury. *Foster* v. *Bank,* 63 Ind. 351; *Bag Co.* v. *Krentler,* 167 Ind. 653; *Lore* v. *Manufacturing Co.,* 160 Mo. 608; *Powalski* v. *Brick Co.,* 110 Wis. 461; *Martin* v. *Manufacturing Co.,* 198 N. Y. 324; *Dillon* v. *Coal Tar Co.,* 181 N. Y. 215. Just what is meant by the phrase "while engaged in their ordinary duties", applied by the statute to servants whose protection it contemplates, need not be ascertained for the purposes of this case. The plaintiff was injured while in the discharge of his ordinary duty, unless it can be said the particular act in the doing of which he was injured was out of the line of his duty, or was an extraordinary duty, and that was a question for the jury. No doubt one of its purposes is to deny the protection of the statute to servants injured, when not on

duty at all. Whether the legislature intended a distinction between ordinary and unusual or extraordinary duty, and intended to limit the protection to servants engaged in the former, may be a debatable question. Very few of the statutes, requiring the guarding of machinery, contain this clause or phrase. It is found in the statute of Missouri, and the courts of that state seem to construe it strictly. *Lank* v. *Bolt & Nut Co.*, 131 Mo. App. 146; *Strode* v. *Box Co.*, 124 Mo. App. 511; *Meifert* v. *Sand Co.*, 124 Mo. App. 491; *Loehring* v. *Construction Co.*, 118 Mo. App. 163. The New York statute is general in its terms, but the courts of that state construe it so as to limit the protection to servants engaged in ordinary duties.

As the contact with the unguarded wringer was sequential in character, the plaintiff having either fallen into it or been thrown into it by the shaft, it becomes necessary to say whether provision against accidents was contemplated by the statute. That it was, is thoroughly established by the authorities. In other words, it is very generally held that the employer must make provision against injury by dangerous machinery in the event of contact therewith as a result of a fall or other similar accident. *Martin* v. *Manufacturing Co.*, 198 N. Y. 324; *Lore* v. *Manufacturing Co.*, 160 Mo. App. 608. "Liability to injury by coming in contact with unguarded machinery does not mean that an employee must be working with the machinery. It is enough that, in the performance of such work as he has to do, it is possible for him to be injured." *Cook* v. *Lumber Co.*, 61 Wash. 118. "It is not necessary that the defendant should have anticipated the exact injury that resulted from his negligence. It is sufficient if by ordinary care he should have known that some injury might happen from such negligence." *Davis* v. *Lumber Co.*, 164 Ind. 413. There is seeming conflict among the authorities as to the extent to which the statute contemplates protection against injury when there are intervening or contributing causes, such as slipping and falling, but the apparent conflict may be reconciled on the anomalous character of some of the accidents or the contributory negligence of the injured party. *Cobb* v. *Welcher*, 75 Hun. 283; *Roots Co.* v. *Meeker*, 165 Ind. 132; *Crawford & McCrimmon Co.* v. *Gose*,

172 Ind. 81. The last two of these cases deny right of recovery under the view that the accident, not the omission of the statutory duty, was the proximate cause of the injury. The doctrine of proximate cause, applied to cases arising under such statutes, would greatly limit their operation. The manifest purpose of the legislature was to provide against accidents, such accidental or inadvertent contact as prudent persons would foresee as being in the line of reasonable probability.

The statute expressly leaves the arrangement of the machinery in the plant in the discretion of the employer, but requires him to guard such of its as is so arranged as to be dangerous. Thus the arrangement of the machinery and the precaution against danger therefrom, are matters as to which he acts at his peril, within the limitations already mentioned. If the arrangement is clearly not dangerous, the guarding may be omitted. But, if the facts and circumstances are such as to carry the question of necessity to the jury, he acts at his peril. From what has been said, it is apparent that the danger may result from the arrangement the master sees fit to adopt. In other words, the relation in which he has placed the various parts of his plant to one another and the duties assigned by him to the servants and the methods adopted for their performance thereof, all enter into the question of liability.

The machine in question here was so constructed and operated as to afford little opportunity for injury by it to persons working around it on the floor. The opening was more than three and a half feet from the floor and it was considerably less in diameter than the machine. Around the opening at the top of it there was a covered margin of three or four inches, under which the revolving basket worked. But, to persons who were required to go above it for any reason or purpose, it might be highly dangerous. Its opening was large enough to admit a man's head, arm or leg, in case he should fall or step into it, and in such case serious injury would be inevitable, for the revolving basket within the opening ran at high speed, over 1400 revolutions per minute. There was evidence from which the jury could infer duty or necessity on the part of some employee to go above this

machine in the performance of his ordinary work. It was necessary to oil the pulleys and bearings of the line shaft and put the belts on the pulleys, and the plaintiff says there was no way to do this without climbing on the washing machine. Of course he did not mean to say a ladder or some 'other means of enabling him to reach the shaft and pulleys could not have been adopted, but, if they had been, they would have placed him on a level with the top of the wringer or above it, so that a misstep or a fall might have brought him into contact with it. Under the principles stated, this evidence was sufficient to carry to the jury two questions, whether the duty, on the part of the servant, to get on some support to oil the pulleys and bearings of the line shaft and put on the belts, was an ordinary one, and whether the placing of the wringer in such close proximity to the place of performance thereof made the work dangerous to the servant and imposed upon the master duty to put a cover or guard over it.

If the omitted duty had been one imposed by the common law, the plaintiff's right of action would be precluded by his assumption of the risk of the injury he suffered. He knew as much about the plant and machinery as the master himself, having worked there for nearly four years and in many other similar places. But the duty left unperformed by the master was a statutory one, and the great weight of authority is to the effect that a servant working around unguarded machinery which the statute requires to be guarded does not assume the risk of such injury as may ensue. The statute does not in terms eliminate assumption of risk, nor say the omission of duty shall be negligence on the part of the master. But to make the statute effective, it is necessary to exclude the assumption of risk and give a right of action for the omission of duty. It is comparatively new, and long before its passage, other statutes imposing duty, without giving any right of action for omission thereof in express terms, had been construed as carrying rights of action for violation thereof, resulting in injury, and as the legislature has acquiesced in such construction, it must be deemed to have approved it, and passed this act under the impression and belief that it would be given a like construction. That injury from the omission

of a statutory duty confers a right of action is a proposition universally accepted, notwithstanding lack of express terms conferring it. By a similar process of reasoning, the courts in the greater number of jurisdictions hold that the assumption of risk on the part of the employee is inconsistent with the true spirit of statutes of this class and incompatible with its enforcement in accordance therewith. The duties imposed upon the master by the common law in favor of the servant may be waived by the latter and the waiver thus allowed is contractual in its nature and amounts to an assumption of risk on the part of the servant. These statutes, imposing duty, make no provision for such waiver. Hence the exception cannot be put in, unless there is a presumption that the legislature intended the statutory duty to be of no higher dignity than common law duties and to permit abrogation thereof by the parties. This presumption cannot be very well accepted, for the reason that the legislature must be presumed to have intended an alteration of the common law. Under it, the master was under a duty to furnish the servant a safe place for work, and, in many instances, it was necessary to guard machinery in order to make the place safe. Masters availed themselves of this common law right of contract to avoid the expense and trouble of making provision for the safety of their servants in many instances in which it should have been done. Their ability to do this and thus expose workmen to unnecessary and unreasonable danger must have been regarded as a defect in the law which the legislature intended to correct by the passage of the statute. A very valuable and accurate note to *Bromberg* v. *Laundry Co.*, 13 A. & E. Ann. Cas. 33, shows that, in the greater number of the states, the courts have eliminated assumption of risk in the construction of statutes of this kind, and that, in those states in which they have not done so, the statutes have been so amended as to eliminate it. We are of the opinion, therefore, that assumption of risk cannot be relied upon as a defense in cases of this kind.

For obvious reasons, contributory negligence remains as a ground of defense, *Norman* v. *Coal Co.*, 68 W. Va. 405, but such negligence on the part of the plaintiff is not conclusively

shown. The evidence would have justified a finding of accidental entanglement with the shaft or belt.

These conclusions result in affirmance of the judgment.

*Affirmed.*