FIFELSKI v. GRAND RAPIDS GAS LIGHT CO.

1. MASTER AND SERVANT—NEGLIGENCE—ELEVATORS.
    Where plaintiff was caught by the freight elevator from which he was attempting to alight at the second landing, and it was not shown that the method of inclosing the shaft had anything to do with the injury or was an improper method, the court should have directed a verdict for the defendant, although it was the contention of the plaintiff that the shaft was not sufficiently inclosed, in violation of section 12, Act No. 285, Pub. Acts 1909 (2 How. Stat. [2d Ed.] § 4020).

2. SAME—PERSONAL INJURIES—EVIDENCE.
    It was erroneous to exclude testimony of experts, offered by defendant, tending to show that the method of inclosure was sufficient.

3. SAME.
    Even the breach of a statutory duty is not actionable unless such breach causes injury either proximately or concurrently.

Error to Kent; Brown, J. Submitted April 28, 1914. (Docket No. 41.) Decided July 24, 1914.

Case by Joseph Fifelski against the Grand Rapids Gas Light Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Travis, Merrick & Warner,* for appellant.

*Lombard, Hext & Washburn* (*John Smolinski,* of counsel), for appellee.

Brooke, J. Plaintiff was injured while in the act of stepping out of an elevator shaft owned and operated by defendant. The shaft in question was about 9 feet square, built of heavy timbers at the corner, and supported at intervals by planks 2x6, running at right angles to each other in the shape of an X, and fastened to the corner posts. The shaft was about 25 feet in height, and tightly boarded up on its east and west sides, and upon the north and south sides, except for the necessary openings. There is one opening in the shaft on the ground level. The next opening is upon the north side of the shaft about 12 or 15 feet from the ground, and connects with the tramway leading to the ash hopper. There is another opening on the south side of the shaft about 4 feet above the one last described. And at the top of the shaft there are two others, one on each side practically opposite each other. All openings were equipped with automatic gates or bars. The cage operated in this shaft was about 9 feet square, and was boarded up on its east and west sides to the height of 4 or 5 feet. The north and south sides of the cage were not inclosed, as it was necessary to wheel coke and ashes on and off from those directions. On the day of his injury plaintiff, with a fellow workman, left his work on the upper tramways and went to the ground. Desiring to regain the tramway and resume

his work, he, with his fellow workman, entered the cage at the ground level. They found it occupied by a fellow-servant with a wheelbarrow full of coke who was about to elevate it to the tramway. Plaintiff took his position near the north edge of the cage in the middle, while Krieger, his companion, stood near the north edge in one corner. The elevator was operated by the third man, who was taking up his wheelbarrow load of coke. When the platform of the elevator was even with the second landing (opening to the north), it stopped. This opening was of somewhat peculiar shape. It was opened practically the full width of the cage up to a distance of 4 or 5 feet, at which point the 2x6 cross supports were fastened. In the center the opening was some 8 or 9 feet high. When the elevator came to a stop at this point, plaintiff turned around and was in the act of stepping off, when the elevator suddenly started, and he was caught at about the highest point of the cross timbers, forming the top of the opening; his shoulder coming in contact therewith. The operator immediately stopped the elevator, but not until the injury was inflicted, which consisted in a broken collar bone and two fractured ribs.

The sole negligence relied upon by the plaintiff is an alleged breach of statutory duty. Section 12 of Act No. 285, Pub. Acts 1909 (2 How. Stat. [2d Ed.] § 4020), provides:

"It shall be the duty of the owner, agent or lessee of any manufacturing establishment where hoisting shafts or wellholes are used, to cause the same to be properly inclosed and secured."

After eliminating all other alleged acts of negligence on the part of the defendant, the court upon this point charged the jury as follows:

"Now, in this case, as I have said, the plaintiff claims negligence on the part of the defendant in the

particulars that I have explained to you; that is, that the elevator shaft was not properly inclosed and secured. There has been some argument here by counsel that 'inclosed' meant that the inclosure or the material for the inclosure should be on the outside of the shaft. I will say that you are not bound by that. If it is necessary to make a shaft reasonably safe and secure for the reasonably safe use by laborers, to ceil it or to incase it on the inside, then that is for you to say, as a matter of law, whether or not it should have been inclosed and ceiled on the inside of the framework of the shaft. You will take the facts in the case and say whether or not it was properly inclosed. It might be possible that you would find where it was boarded on the outside, entirely boarded, so that from the outside it was perfectly smooth, and yet under the facts in the case you might find that it was in such a condition on the inside that it was not properly inclosed. And that word 'inclosed' does not mean separated away from the elements, that is, from the rain and the weather; but it means so inclosed by proper encasement, either on the inside of the framework, material or otherwise, that it was rendered safe, reasonably safe, for the employees working inside.

"Now, in this case, if you should find that this plaintiff came to his injury solely by reason of the elevator being started, and that no matter if the shaft had been ceiled up on the inside, or, if you shall find, whether it was properly inclosed or not, if the sole cause of the injury was the starting of the elevator, and if you should find it lacked suitable and proper inclosure, but you should find that the failure to have a suitable inclosure did not contribute to the injury, was not a proximate or concurring cause of the injury, then the plaintiff could not recover, because, if you find that the sole cause of the injury was the other fellow starting the elevator, that would be a fellow-servant act, and the plaintiff could not recover where the injury would be solely caused by a fellow-servant act. But if you find that the act of a fellow-servant started the elevator, and then you should further find that the elevator was not properly incased or inclosed and secured as the statute says to make it reasonably safe in there, and that the failure

to inclose the elevator and the negligent act of the fellow-servant both together, at the same time, cooperated in producing the injury, then they are concurrent acts and both proximate and efficient causes, bringing about this injury, and the plaintiff would be then entitled to recover, if he is not guilty of any negligence himself in the situation."

It seems to have been the contention of plaintiff's counsel that a proper construction of the statute would require the defendant, not only to inclose the elevator shaft, but to line it. Of course it is obvious that, even had the shaft been lined, provision must have been made for the openings, otherwise the shaft would have been useless. No evidence was introduced on the part of the plaintiff tending to show what the term "properly inclosed" meant. Nor was any evidence introduced tending to show that a different method of inclosure than that employed would have rendered the shaft safer in so far as the injury to plaintiff went. The instruction above quoted permitted, if it did not invite, the jury to find that the defendant was guilty of a breach of its statutory duty in the absence of any testimony whatever as to what would have constituted a compliance with the statute. It likewise permitted the jury to find, in the absence of all testimony upon the question, that such breach, if it occurred, was a concurring cause of plaintiff's injury. The instruction was clearly erroneous. Defendant offered evidence of the deputy State factory inspector as to the customary way of inclosing similar shafts, which testimony was excluded.

It is defendant's contention that a verdict should have been directed in its favor upon the ground that no negligence had been shown. We have examined this record with care, and are unable to see how a breach of the statutory duty, even if there was one in the respect charged, had anything to do with the accident and injury to plaintiff. The elevator had come

to a standstill at the opening. That opening was 9 feet wide, 4 feet high on each side, and 8 or 9 feet high in the center. If plaintiff's contention is warranted, and a compliance with the statute required the lining of the shaft on the inside, it is yet true that, in order to permit him to make his egress from the cage, that lining would have to be temporarily removed, leaving the opening exactly as it was when he attempted to step out of the cage. We think it unnecessary, then, to determine what the term "properly inclosed" used in the statute means. It is, however, clear that the term is a relative one, and that in any given case it must have reference to the use to which the instrumentality is to be put. *State* v. *Rodgers*, 175 Ind. 25 (93 N. E. 223); *Chicago Packing & Provision Co.* v. *Rohan*, 47 Ill. App. 640.

Such being the case, evidence as to what would be a proper inclosure should have been admitted if the character of the inclosure had any causal bearing upon the injury. It is, of course, elementary that even the breach of a statutory duty is not actionable, unless such breach causes injury, either proximately or concurrently. The breach, if there was one in the case at bar, had no bearing upon the accident.

A verdict should have been directed in favor of defendant. The judgment is reversed, and there will be no new trial.

MCALVAY, C. J., and KUHN, STONE, OSTRANDER, and STEERE, JJ., concurred with BROOKE, J.

MOORE, J. I concur in the reversal, but think a new trial should be granted.

BIRD, J., concurred with MOORE, J.