## SALLISAW COTTON OIL CO. v. HOLLAND.

No. 5107. Opinion Filed November 16, 1915.

Rehearing Denied March 21, 1916.

(156 Pac. 174.)

1. **MASTER AND SERVANT — Injury to Servant — Safeguarding Machinery—Proof.** In order to sustain a recovery for injuries under section 3746, Rev. Laws 1910, requiring the employer to guard dangerous machinery, it must be shown that the person injured was injured while employed and laboring in a manufacturing establishment, and while in the performance of a duty, whether ordinary or general, exceptional or occasional, and while acting within the scope of such employment.

2. **SAME—Duty of Master—Extent.** Section 3746, Rev. Laws 1910, requires only such machinery to be properly guarded as can be so guarded without rendering such machinery useless.

3.	**SAME—Injury to Servant—Causal Connection—Burden of Proof.** In an action for damages, predicated upon negligence, the burden is upon the plaintiff to show by a preponderance of the evidence that there is causal connection between the negligence averred and the injury suffered.

4.	**DAMAGES—Injury to Servant—Causal Connection—Burden of Proof.** In an action for recovery of damages for negligence, if it be shown by the evidence there was negligence, there can be no recovery, unless the evidence, by a preponderance, also shows causal connection between the negligence proved and the damages sustained.

5.	**SAME—Allegation and Proof—Direction of Verdict.** In an action for damages for negligence, if the evidence fails to show causal connection between the negligence averred and the injuries suffered, the court, upon proper request, should direct a verdict for the defendant.

6.	**MASTER AND SERVANT—Injury to Servant—Negligence— Sufficiency of Evidence.** Evidence examined, and found not to sustain the judgment of the trial court.

(Syllabus by Collier, C.)

*Error from District Court, Sequoyah County;*
*John H. Pitchford, Judge.*

Action by W. A. Holland against the Sallisaw Cotton Oil Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Kyle & McCombs* and *Read & McDonough,* for plaintiff in error.

*Curtis & Pitchford,* for defendant in error.

Opinion by COLLIER, C. This is an action brought by defendant in error against plaintiff in error to recover for personal injuries. Hereinafter the parties will be designated as they were in the trial court.

The parts of the petition in this cause, omitting caption and signatures and affidavits, which are material to a proper review of the case, read:

"(2)   That on or about the 11th day of November, 1910, plaintiff was delivering at defendant's place of business a load of cotton seed, the property of said defendant, by removing same from a wagon box or bed into an open trough or box, which said trough or box contained a screw or cylinder, so constructed that when in motion it would convey the seed from the place or places where persons unloading them into defendant's buildings prepared for the purpose of receiving and storing same.

"(3)   That on the date last above mentioned said defendant had carelessly and negligently failed to construct a cover or lid for such trough or box, or take such other precaution as was necessary to protect its employees and the public, and its customers, from injury by reason of the motion of said screw or cylinder, but carelessly, willfully and negligently left the same exposed.

"(4)   That on the last-named date this plaintiff, while unloading cotton seed into said box or trough, slipped and fell from his wagon into said trough and upon said cylinder or screw, thereby sustaining a broken leg and other serious injuries and bruises.

"(6)   That his said injuries were not received or brought about by carelessness or negligence of plaintiff, and could not have been reasonably apprehended by an ordinarily careful and prudent man."

Defendant moved the court to require plaintiff to make the petition more definite and certain, which motion was overruled and exception duly saved. Thereupon defendant filed its answer, denying each and every material allegation of the petition and setting up contributory negligence and assumption of risk on the part of plaintiff.

The material part of the evidence of plaintiff is as follows:   That on November 16, 1910, he brought a load of cotton to Sallisaw to the gin to be ginned and baled; that after the cotton was ginned he got the cotton seed

into his wagon and carried it up to the oil mill and sold it; that after he sold said seed, he drove from the scales around to the conveyor to unload same into the conveyor; that the conveyor was built along the building; that the conveyor was a long box, with a conveyor or augur therein; that it conveyed the seed out into a room that was on the right; that the conveyor was not covered; that there was nothing in the box about the screw of the conveyor to prevent anything getting down to it; that he drove up there and threw his lines; that he did not know what he did with his lines; that he could not remember; that he turned the team a little away from the conveyor, and there was no scoop or seed fork that he could reach from the wagon, as there had been before; that he never had occasion to get out of the wagon before, because there was always a scoop or fork where he could reach it; that there were two other wagons in front of him unloading seed when he drove up; that he stopped there, and the man said, "Do you want to unload?" and he stopped there and waited; that he stepped out at the end; that after he waited awhile he then drove up by the side of the conveyor to unload; that he started to get out of the wagon and get a scoop, and after that he did not know that he undertook to get out, and the next thing he knew he was in the conveyor; that he did not know how he got. there; that it caught his left foot and drew him into the conveyor and injured him.

On cross-examination he testified that he had lived in that section for three years; that in 1909 he sold a part of his cotton seed and carried it to the oil mill; that he could not tell how many times he had been to the oil mill before; that he had been there several times; that he had

delivered cotton seed to the same conveyor several times; that, if there had been a top to the conveyer, it would have had to be raised to throw the seed in; that the seed could not be thrown into the conveyor if it had a cover on it; that he knew that the box or conveyor had no covering on top of it; that he had been there several times before and saw it; that it was in the same condition every time that he saw it, and that he thought he left the sideboard next to the conveyor off; that the way he had usually been doing was to get a scoop without getting out of the wagon, because there would be one either directly behind his wagon, or where he could reach it from his wagon; that there was a scoop or fork hanging just in front of his team; that in getting out of the wagon he started to get out just like any one else would; that he put his feet over the side of the board and intended to get out on the front wheel; that his team were facing south; that the conveyor was on the west side of it; that he started over the west side of the wagon; that he did not remember whether he got on the wheel; that he started out of the wagon, and the next thing he knew he was in the conveyor; that he did not remember how he got there; that he did not know whether he fell or was thrown into the conveyor; that he was in there, and that is all he knew; that, as he remembered, he intended to get on the wheel; that he did not know whether he slipped or not; that, of course, he would have to get on the wheel to get on the ground; that, if he had so undertaken, he could have stepped on the step on the bed, but that he was in a hurry to get unloaded and get away, and undertook to get out the nearest way; that he imagined he got over the fore wheel; that he could not say whether he had his foot on the tire of the wheel or not;

that, as stated to Dr. Hudson, he thought he slipped off the wheel into the conveyor; that he thought he had his left foot on the wheel, but that after he got to studying about it, and seeing the position he would have to be in at the time, he could not possibly have had his left foot on the wheel, because his face was towards the building, and, of course, his left foot, being in his way, would have had to be twisted around to get his left foot there; that he did not get off the opposite side of the wagon, because the extra sideboard was on that side; that he could have gotten off on the opposite side by climbing over the sideboard; that, if he had gotten out of the rear end of the wagon, he would not have fallen into the conveyor, unless he had been thrown in, and there was no one there to throw him in; that he could have gotten out in the back of the wagon in safety and without getting into the conveyor; that there was a high sideboard on the front and back end of the wagon bed; that he could have climbed over the front of the wagon by climbing over that high sideboard and getting right over on the mules, being just as liable to fall between or under the mules as any way; that he saw the machinery uncovered there and in operation, and, seeing that machinery, undertook to climb over next to that machinery and get down that way; that there was plenty of room so he could have gotten down between the box and the wagon; that he might have rubbed against the box, but there was plenty of room to get down there; that he could not have fallen from any position that he was in in getting down; that he could have gotten down without being thrown into the conveyor; that, if he had gotten down himself, he could have gotten down on the ground in perfect safety without falling into the conveyor; that he

did not know what caused him to fall; that he did not know whether his mules jumped or not when he started to get out; the mules were not wild mules; one of them was afraid of machinery; the other was not; that he did not know whether any one was holding the mules or not; that he was not in the habit of turning his lines loose; that there was a crossbeam up over where the scoop or fork was hanging on a twentypenny nail, and he usually put his lines over that beam and fastened them up there to unload; that he did not remember what he did with his lines this time; that he probably just threw them down on the wagon; that there was plenty of room for him to get down without being hurt; that he did not know how he fell; that he did not know the cause of his fall; that he had never stated what was the cause of his fall.

A. J. Curtis testified in behalf of plaintiff that he had recently visited a number of cotton seed mills in different parts of the country and inspected them as to how seed conveyors were constructed, and found some of them were covered. Defendant objected to the introduction of the evidence of this witness, which objection was overruled; to which defendant duly excepted.

There was uncontradicted evidence that the injury received by plaintiff, and the expenditures on account thereof, were as averred in the petition; that he was a farmer; that he was totally incapacitated to perform the work of a farmer; and that his services were worth from $25 to $30 per month.

Upon the conclusion of the evidence of plaintiff defendant demurred thereto and moved for an instructed verdict, for the following reasons:

"(1) The testimony on the part of the plaintiff fails to show any negligence on the part of the defendant; (2) the testimony on the part of the plaintiff fails to show that the cover pleaded in the petition would have lessened the risk of the plaintiff; (3) because the testimony in this case fails to show that the conveyor as used is not such as is ordinarily used by persons engaged in like business; (4) because it is not shown that it would be practicable to use a conveyor with a cover or screen over the same, and because it has not been shown that the failure to use a cover or screen was the proximate cause of the injury; (5) because the testimony on the part of the plaintiff does not show how the accident happened; (6) because the testimony of plaintiff shows that he was guilty of contributory negligence at the time, which was the proximate cause of the injury."

Said demurrer and motion was overruled, to which defendant duly excepted.

Under the view we take of this case, it is unnecessary to set out or consider the grounds of the motion for continuance, any of the evidence of defendant, or exceptions to the evidence of plaintiff, any instructions asked by defendant, and refused, or the general instructions of the court.

The jury found for plaintiff and assessed his damages in the sum of $3,000; to which defendant duly excepted. Defendant timely moved the court for a new trial, which was overruled, and judgment entered on the verdict; to which defendant duly excepted. To reverse said judgment this appeal is prosecuted.

There are but two propositions involved in this controversy: (1) Was the defendant negligent in not having said cotton seed conveyor covered? (2) If defendant was negligent in not having said cotton seed conveyor covered,

was such negligence the proximate cause of the injury suffered by the plaintiff?

It is strenuously insisted in the argument or brief of plaintiff that the act known as the "Factory Act," as found in section 3746, Rev. Laws 1910, was violated by defendant's failing to have said cotton seed conveyor "properly guarded," and that this violation was such negligence as to entitle plaintiff to a recovery, under the evidence in this case. With this contention of the learned attorneys for plaintiff, we cannot agree, as we do not think said Factory Act can be construed as in any way applying to the instant case.

The case of *Curtis & Gartside Co. v. Pribyl*, 38 Okla. 511, 134 Pac. 71, relied upon by plaintiff as in conflict with our view "that the said Factory Act does not apply in this case," holds that:

The act was "to protect persons employed and laboring in manufacturing establishments while in the performance of any duty, whether ordinary or general, exceptional or occasional. But its protection extends only to persons acting within the scope of some employment."

Certainly plaintiff was not acting within the scope of some employment in a manufacturing establishment; hence said case is not in point with the contention of plaintiff, but directly supports the view expressed by us that said Factory Act is not applicable to the case at bar.

The following cases support the proposition that one, to come within the provisions of the Factory Act when injured, must be engaged in the discharge of some duty as an employee: *Christianson v. Northwestern Comp. Board Co.*, 83 Minn. 25, 85 N. W. 826, 85 Am. St. Rep. 446; *Hartman v. Berlin & Jones Envelope Co.*, 71 Misc. Rep.

30, 127 N. Y. Supp. 187; *Cook v. Danaher Lbr. Co.*, 61 Wash. 118, 112 Pac. 245; *Thompson v. Edward P. Allis Co.*, 89 Wis. 523, 62 N. W. 527.

Plaintiff's work did not require him to work with the conveyor, or within its danger zone. Therefore defendant did not owe him the duty of keeping said conveyor covered.

In *Dettering v. Levy et al.*, 114 Md. 273, 79 Atl. 476, it is held:

"In determining whether the location of an unguarded revolving shaft is dangerous, so that it is negligence to fail to guard it, the question is whether the operatives while in the discharge of their duties are likely to come in such close contact with it as to produce injury."

In *Gelder v. International Ore Treating Co.*, 150 App. Div. 184, 134 N. Y. Supp. 782, it is held:

"Under Labor Law (Consol. Laws 1909, c. 31) sec. 81, requiring machinery to be properly guarded, the duty to guard only arises when there is a reasonable anticipation of danger."

In *Cincinnati, R. & M. R. Co. v. Troutman et al.*, 38 Ind. App. 700, 75 N. E. 277, it is held:

"Factory act, sec. 9 (Burns' Ann. St. 1901, sec. 7087i), requiring that all vats, pans, saws, planers, etc., and 'machinery of every description,' shall be properly guarded, only requires the guarding of such parts of machinery in a factory within the statute as are dangerous to employees whose duty requires them to work in the immediate vicinity thereof, and which may be properly guarded without rendering it useless for the purposes for which it was intended."

In order to sustain a recovery for injuries under the law requiring the employer to guard dangerous machinery it must be shown that the person injured was an employee,

and that the machinery could be properly guarded without rendering it useless. *Robbins v. Ft. Wayne Iron & Steel Co.*, 41 Ind. App. 557, 84 N. E. 514.

If, however, it be admitted that the Factory Act is applicable to the instant case, was it negligence to have said cotton seed conveyor uncovered? The undisputed evidence is that, in order to use said cotton seed conveyor for the purposes of its erection, it was necessary to have said conveyor open, and consequently it was not practical to have said conveyor guarded. It is only when it is practical to have the machinery guarded that the employer is liable for injuries suffered by reason of failure to have said machinery guarded. *Curtis & Gartside Co. v. Pribyl, supra.*

In *Reddington v. Blue & Raferty*, 168 Iowa, 34, 149 N. W. 933, it is held:

"The duty placed on the master by Code Supp. 1907, sec. 4999a2, to guard a machine used in bottling pop requires that he provide such guard as is fit, suitable, and appropriate to reasonably protect the operator from the bursting of a bottle, so far as practicable, without unreasonably interfering with the efficiency of the machine."

In *Wagner v. Standard Sanitary Mfg. Co.*, 244 Pa. 310, 91 Atl. 353, it is held:

"As used in Factory Act May 2, 1905 (P. L. 352), requiring that dangerous machines be properly guarded when in operation, the phrase 'properly guarded' means suitably guarded according to the circumstances and possibilities of the particular case. Hence, if a machine cannot be protected in any manner without rendering it useless, there is no suitable guard for it, and it cannot be 'properly guarded.'"

The only negligence on the part of defendant averred in the petition or attempted to be shown by the evidence is that said cotton seed conveyor was not covered. This brings us to the pivotal question involved in this case. Even if it be admitted that the failure to have said cotton seed conveyor covered was negligence, we are at a loss to see any causal connection between said negligence and the injury received. To entitle plaintiff to recover, it must be shown that the injury received was the result of causal connection with the negligence alleged.

In *St. Louis & S. F. R. Co. v. Darnell*, 42 Okla. 394, 141 Pac. 785, it is said:

"* * * It has been often held that, although the defendant may be guilty of negligence, yet, to make it liable to a person for injuries received, it must be further shown that the negligence had a causal connection with the injury; that is, that it was the proximate cause of the injury."

The cause that brought about the deplorable accident here complained of is not shown by the evidence. It is a mere conjecture. Was it due to want of care by plaintiff, in attempting to alight from the wagon; or was it due to the action of his mules in throwing him from the wagon? Certainly there is no evidence that the open conveyor was the cause of negligence that brought about the injury complained of.

In *Fifelski v. Grand Rapids Gaslight Co.*, 181 Mich. 503, 148 N. W. 195, it is held:

"Where an employee was injured while in the act of stepping off an elevator maintained by his employer, and operated by a coemployee, by the sudden starting of the elevator, the failure of the employer to inclose and secure

the elevator, as required by Pub. Acts 1909, No. 285, sec. 12, was not the proximate cause of the accident, and there could be no recovery on that ground."

In *Patton v. Texas & Pac. Ry. Co.*, 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361, it is said:

"* * * It is not sufficient for the employee to show that the employer may have been guilty of negligence; the evidence must point to the fact that he was. And, where the testimony leaves the matter uncertain and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible, and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion. If the employee is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony, and no mere sympathy for the unfortunate victim of an accident justifies any departure from settled rules of proof resting upon all plaintiffs."

In *St. Louis & S. F. R. Co. v. Hess*, 34 Okla. 615, 126 Pac. 760, Brewer, C., says:

"It is a well-established rule that, although a defendant may be shown to have been negligent, yet, unless the negligence so shown was the proximate cause of the injury complained of, no recovery can be had for the negligence. *Neeley v. S. W. Cot. Co.*, 13 Okla. 356, 75 Pac. 537, 64 L. R. A. 145; *Mayne v. Chicago, etc., Co.*, 12 Okla. 10, 69 Pac. 933; *Stephens v. Okla. Ry. Co.*, 28 Okla. 347, 114 Pac. 611, 33 L. R. A. (N. S.) 1007; *C., R. I. & P. Ry. Co. v. Beatty*, 27 Okla. 846, 116 Pac. 171; *Mills v. Wilmington City Ry. Co.*, 1 Marv. (Del.) 269, 40 Atl. 1114; *Byrd v. Express Co.*, 139 N. C. 273, 51 S. E. 851; *Marsh v. Giles*, 211 Pa. 17, 60 Atl. 315; *Florida C. & P. R. Co. v. Williams*, 37 Fla. 408, 20 South. 558; *Sullivan v. Morrice*, 109 Ill.

App. 650; *Perry v. Central R. Co.*, 66 Ga. 746; *Stepp v. C., R. I. & P. Ry. Co.*, 85 Mo. 229; *Louisville, N. A. & C. Ry. Co. v. Thompson,* 107 Ind. 442, 8 N. E. 18, 9 N. E. 357, 57 Am. Rep. 120; *Brotherton v. Manhattan Beach Imp. Co.*, 48 Neb. 563, 67 N. W. 479, 33 L. R. A. 598, 58 Am. St. Rep. 709; *Tutein v. Hurley,* 98 Mass. 211, 93 Am. Dec. 154; *Patch v. City of Covington,* 17 B. Mon. (Ky.) 722, 66 Am. Dec. 186; *Worcester v. Great Falls Mfg. Co.,* 41 Me. 159, 66 Am. Dec. 217, and note 219."

In 29 Cyc. 589, the rule is stated as follows:

"As a general rule it may be stated that negligence is a fact which must always be proved and will never be presumed. The mere fact that an accident has happened does not authorize the inference of negligence on defendant's part, although it may be taken into consideration with other facts and circumstances of the case."

See, also, *Patterson v. Seals,* 51 Okla. 347, 151 Pac. 591; *C., R. I. & P. Ry. Co. v. McCuller,* 30 Okla. 178, 120 Pac. 279; *Woolsey v. Ziegler,* 32 Okla. 715, 123 Pac. 164; *Moore v. First Nat. Bank,* 30 Okla. 623, 121 Pac. 626; *M. V. R. R. Co. v. Bailey,* 34 Okla. 193, 124 Pac. 987; *C., R. I. & P. Ry. Co. v. Watson,* 36 Okla. 1, 127 Pac. 693; *Hughes v. C., R. I. & P. Ry. Co.,* 35 Okla. 482, 130 Pac. 592.

The case of *Solts v. Southwestern Cotton Oil Co.,* 28 Okla. 706, 115 Pac. 776, is a case very similar to the one under discussion, and in said case it is held:

"The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence which has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict should the jury find in accordance therewith."

In the case of *M. V. R. R. Co. v. Bailey, supra,* it is said:

"When there is no conflict in the evidence, and when there are no facts or circumstances reasonably tending to show that the defendant has been guilty of a breach of duty, then there is no question to submit to the jury, as the primary negligence of the defendant is not to be submitted to the jury in the absence of some evidence tending to establish it."

See, also, *Phoenix Printing Co. v. Durham,* 32 Okla. 575, 122 Pac. 708, 38 L. R. A. (N. S.) 1191; *Solts v. Southwestern Cotton Oil Co., supra; C., R. I. & P. Ry. Co. v. Baroni,* 32 Okla. 540, 122 Pac. 926.

Applying the rule in *Solts v. Southwestern Cotton Oil Co., supra,* there is not enough evidence to sustain the judgment rendered; and the court committed prejudicial error in overruling the demurrer to the evidence and refusing to direct a verdict in favor of defendant.

It follows that this cause should be reversed and remanded.

WATTS, C., being disqualified and not participating, COLLIER, C., sat with Division No. 4 on oral argument, and wrote the opinion.

By the Court: It is so ordered.