## CHICKASHA MILLING CO. v. PLOWMAN.

No. 11469—Opinion Filed June 5, 1923.

Rehearing Denied Dec. 18, 1923.

1. **Negligence—Causal Connection with Injury—Necessity.**

Where there is no evidence of causal connection between the primary negligence of the defendant and the injury of the plaintiff, there is no question for the jury, and a verdict for the defendant should be directed by the trial court.

2. **Death—Action for Negligent Death—Failure of Proof.**

Where, as in this case, there is no evidence as to how the injury occurred, in some way placing the blame on the defendant for the injury, the plaintiff fails in establishing a right to a recovery.

3. **Same—Burden of Proof—Causal Connection.**

The burden is upon the plaintiff to show causal connection between the primary negligence of the defendant and the injury of the plaintiff.

4. **Same—Injury in Elevator.**

Held, in this case, that there was no evidence, either direct or circumstantial, tending to establish causal connection between the open hole in the defendant's elevator shaft and the injury complained of by the plaintiff.

5. **Same—Degree of Care Due Invitee.**

Held, in this case, that even though plaintiff's intestate was an invitee when he went into the open hallway of defendant's elevator plant, defendant did not owe him a high degree of care to not injure him; but owed him only ordinary care to furnish him a reasonably safe place when making inquiry as to when he could unload his grain.

**6. Negligence—Personal Injuries — Causal Connection—Question for Court or Jury.**

In the trial of personal injury cases, the weight of the evidence is a question for the jury; but whether there is any evidence tending to show causal connection between the primary negligence of the defendant and the injury complained of is a question of law to be determined by the court, and when there is an entire lack of such evidence, a verdict for the defendant should be directed by the trial court.

(Syllabus by Shackelford, C.)

Commissioners' Opinion. Division No. 4.

Error from District Court, Jefferson County; Cham Jones, Judge.

Action by Mattie F. Plowman against the Chickasha Milling Company, for injury resulting in the death of James C. Plowman, husband of the plaintiff. Judgment for plaintiff. Defendant brings error. Reversed.

Bond, Melton & Melton, for plaintiff in error.

Bridges & Vertrees, for defendant in error.

Opinion by SHACKELFORD, C. This cause was begun September 8, 1919, in the district court of Jefferson county, Okla., by the plaintiff, Mattie F. Plowman, for herself and her five minor children, against the Chickasha Milling Company, a corporation, because of injury resulting in the death of James C. Plowman, husband of the plaintiff and father of the minor children.

It is charged in the petition that James C. Plowman got his hand hurt in the elevator shaft of the defendant company's elevator plant, on the 25th day of July, 1919, which resulted in his death on the 9th day of August, 1919. The suit was brought for $30,-000. The cause was tried to a jury on the 14th day of January, 1920, resulting in a verdict and judgment on behalf of the plaintiff for the sum of $10,000, and the defendant corporation appeals by case-made.

The portion of plaintiff's petition charging negligence upon the part of the defendant company, is as follows:

"That the said defendant, in conducting its business in the town of Hastings, Okla., operated and maintained at all the times herein mentioned, an elevator, where it stored its grain and the grain of farmers in said community, and said elevator was constructed, maintained and operated as follows, to wit: The north side of said elevator runs east and west about fifty feet, and at and near the center of the north side of said elevator there is an opening of about six feet square, and in said opening there was constructed, maintained and operated a hol-

low shaft about twelve inches square, running from the basement of said elevator to the top thereof, in which shaft there was a certain belt upon which were fastened tin cups at regular intervals, and a short distance apart, for the purpose of carrying grain from the basement of said elevator to the top thereof; that said shaft containing said belt and tin cups is about eighteen inches within said opening from the north line of said elevator and near the middle of said opening; that immediately north of and adjoining said opening where said shaft is located there was constructed a wooden floor over a part of the basement of said elevator with a trap door near the east end of said first floor, upon which floor wagons were driven and unloaded into said trap door in said floor: that in constructing the shaft containing said belt and tin cups within the opening of the north wall of said elevator about two or three feet from the floor of said elevator running about a distance of eighteen or twenty inches up said shaft and for the entire width of said shaft, there was left an opening in said shaft, exposing and leaving unguarded and unprotected the belt and tin cups that carry grain to the top of said elevator which tin cups were worn, rusty, and in a fork-like condition, and that said opening in said shaft where said belt and tin cups were exposed and unguarded and unprotected was unnecessary at that place in said shaft for defendant to properly conduct its business.

"Plaintiff says that on the 25th day of July, 1919, James C. Plowman, husband of this plaintiff and father of said children, took a load of oats to said elevator and upon the floor upon which wagons are driven to unload grain in the basement of said elevator, and while in and around said opening in the middle of said north wall of said elevator, where said shaft was constructed and operated and where the belt and tin cups fastened thereon in said shaft so exposed and unprotected, and at a time when said belt and tin cups was being run and operated and while the said James C. Plowman was getting ready and preparing to unload said wagon of oats, and while ascertaining from the agents and employes of said defendant when, where and how said wagon of oats should be unloaded, and while taking the necessary steps to unload said wagon of oats in the defendant's elevator, and without fault or negligence upon the part of the said James C. Plowman, the right hand of the said James C. Plowman was caught by one or more of the tin cups upon said belt, left open and exposed by the opening in said shaft, and as a result thereof, said hand of the said James C. Plowman was cut, bruised and lacerated and from which cuts and bruises upon said hand, and as a result thereof the said James C. Plowman did, on the 9th day of August, 1919, die, from blood poison caused by said injuries.

"Plaintiff. alleges and says that the defendant herein by reason of operating and conducting said elevator with the opening of about six feet in the north wall of said elevator, and by constructing in said opening said shaft and leaving an opening of about eighteen or twenty inches about two feet from the floor of said elevator in said shaft, where the belt upon which tin cups were fastened, and where the various persons unloading grain in said elevator were constantly and continually thrown in and around said shaft in unloading grain in said elevator, and by leaving said belt and tin cups unguarded and unprotected as aforesaid, and with no means of closing up said opening in said shaft, and by so constructing and operating said elevator that all persons unloading therein were compelled to go in and around said opening in said north wall where said shaft was located and unprotected and unguarded, and by reason of no necessity existing for said defendant to make said opening in said shaft and no necessity for the defendant to leave said belt and tin cups fastened thereon exposed and unguarded to properly conduct its business, said defendant was guilty of negligence, which negligence was the proximate cause of the death of the said James C. Plowman and the damage to this plaintiff and said children."

The defendant company filed its motion to require the plaintiff to make the petition more definite and certain, asking that plaintiff be required to show how, and in what manner, and for what purpose plaintiff's intestate came in contact with the cups in defendant's elevator shaft, and, further, how, and in what manner, the injuries received resulted in his death. The plaintiff was permitted to amend her petition by interlineation, but what the petition was originally, or what the interlineation consisted of, is not shown in the case-made, but after the interlineation, the motion to make more definite and certain was overruled, to which defendant company excepted.

On the 30th day of September, 1919, defendant demurred to plaintiff's petition as amended because the petition did not state facts sufficient to constitute a cause of action, which demurrer was overruled, and the defendant company excepted.

On the 13th day of October, 1919, defendant filed answer: (1) Denying all the material allegations contained in the petition; (2) specifically denying that plaintiff's intestate was injured by the carelessness or negligence of the defendant, its agents, servants or employes, and alleging that if plaintiff's intestate was injured it resulted from his own carelessness and negligence; and (3) specifically denying that the cuts,

bruises, and lacerations received were the direct and proximate cause of his death, but that death resulted from improper care and treatment, which defendant charges was the proximate cause of the death.

The defendant, at the beginning of the trial, objected to the taking of any testimony, for the reason that the petition did not state facts sufficient to constitute a cause of action, which objection was overruled, and exception saved.

Upon the trial of the cause it was shown, in substance, that James C. Plowman was the husband of the plaintiff and the father of plaintiff's children; that he was 38 years old and had an expectancy of 29.62 years; that he was industrious, physically able to perform labor, was engaged in farming, and at times working for wages, earning about $1,200 a year, and used the proceeds of his labor in the support of his family. That he died August 9, 1919, and that no administrator had ever been appointed. That the occasion of his death was an injury sustained by him to one of his hands, caused by getting it caught and torn by an elevator cup in the elevator shaft in defendant's mill, and that the injury became infected with tetanus, resulting in his death.

It was shown that the defendant's plant, where the injury occurred, was an elevator where grain was stored. That it was a building approximately 50 feet long, divided into four grain bins, two on the north end and two on the south end, and that there was a basement under these bins into which the grain was dumped from wagons and elevated into the bins. That through the center of the building was a hallway about six feet wide, running east and west. That in this hallway was constructed the contrivance for elevating the grain. That there was a shaft about 12 inches square coming up through the floor from the basement, running perpendicularly into the upper part of the elevator, constituting what witnesses referred to as one leg of the elevator, and a little further toward the west in the hallway was the other leg of similar construction. That in the open space within this leg or elevator shaft, ran a conveyor belt nearly as wide as the open space in the leg, on which was fastened metal cups, spaced about 23 inches apart, for carrying grain. That the conveyor belt went up one leg loaded with grain, and came down the other one empty. That the east leg of the elevator shaft was located about 18 inches from the inside of the east wall of the elevator building in the six foot hallway. That on the east side of the elevator was a driveway for wagons arranged so that they were to

come in from the south end, traveling to the north along the east side of the main elevator building. That in this driveway, and opposite the hallway running through the building, was constructed a dump for unloading the grain. That it was the business of the teamster to drive his team and wagon along the driveway to a point where the back end of the wagon would stand upon the dump, and either sit on the wagon and hold the team or he might, if he liked, alight on either side. That the driver had nothing to do with dumping the grain out of the wagon, but it was the duty of some employe of defendant company to work the dump so that the back end of the wagon would be slanted down, and remove the back end gate, and let the grain run out into the dump, and thence into the basement of the elevator building where it would come in contact with the conveyor belt with the cups thereon, and be carried away and released into the bins. That when the wagon was unloaded the driver would then drive away. That the east leg of the elevator shaft had an opening about two feet from the floor and extending upward for substantially two feet, the full width of the elevator leg. That at the time the injury occurred there was no shutter or covering for this opening in the shaft. That sometimes the employe would place a sack over this opening, for the purpose of keeping dust from the grain from coming out into the elevator building on the ground floor. That sometimes it was necessary for one of the employes to go below into the basement of the elevator to regulate the running of the grain, and at such times the sack would be removed from the opening in the elevator leg so as to make a better draft to relieve the employe below from the dust accumulating in the basement. That when the employe would come out of the basement, ordinarily the sack would be placed over the opening in the elevator leg. That the east leg of the elevator shaft was west of the driveway a distance of about four feet. That the open space in the hallway of the elevator building was floored, and furnished floor space for the employes, and it was never the duty of the grain hauler or driver of the wagon to go into the hall.

That plaintiff's husband, James C. Plowman, was not an employe of the defendant company, but on the day he received his injury he and another farmer went to the elevator to deliver two loads of oats. That the other man had driven his load of oats onto the dump, and it had been unloaded, and that James C. Plowman was the next in line to unload. His wagon and team were standing about 15 or 20 feet away, awaiting the opportunity to drive onto the dump, but

there was some delay occasioned by some of the oats being wet or damp, and not elevating good, so that one of the employes went below to look about the matter. Plowman, having waited 20 or 30 minutes, and thinking there was something making an unnecessary delay, left his wagon and went into the elevator building to make inquiry about when he could unload, and by some means came in contact with the metal cups on the conveyor belt and received his injury. Plowman reported his injury and was taken to a doctor for treatment. It was shown in the trial that right following the injury Plowman said to one witness, "Boy, I got hurt"; and when asked how it happened he said, "I caught hold of the elevator and caught my hand in the cups." It seems no further explanation was made by Plowman at the time. Upon the trial of the case the plaintiff offered to prove that Plowman explained to her how he came to get hurt. This offer was objected to by the defendant and sustained by the court, and it was admitted by the plaintiff that it would be incompetent for the plaintiff to detail what Plowman had told her about how he came to receive his injury. The offer made, as appears from the record, is as follows:

"Mr. Vertrees: I desire to dictate what her testimony would be if she were allowed to testify—the evidence would show, if this witness were permitted to testify as to how the injury occurred, that within an hour after the injury occurred he explained to this plaintiff that he had gone to the elevator for the purpose of unloading a load of oats; that something was wrong down beneath the elevator that necessitated a wait of 20 or 30 minutes and that he waited there about that length of time to get his wagon unloaded and then went in to the elevator and kneeled down by the side of the shaft for the purpose of inquiring and ascertaining when they would be ready for him to unload his load of oats, and that in arising from his stooping posture he became overbalanced and in reaching to protect himself from falling he caught his hand in the open space in this shaft from which he received the injury."

Aside from this statement there appears to be no explanation about how the injury occurred. It was shown that at the time Plowman received his injury the opening in the elevator leg was in no way covered up.

It was further shown that the hole in the elevator leg was used for making repairs on the cups and conveyor belt, and that the floor space in the main elevator building was for the use of employes only. It does not appear from the record that anybody saw Plowman at the time of his injury.

It appears that the negligence relied upon by the plaintiff for a recovery was the fact that the hole in the elevator shaft was at the time of the injury, standing open and unprotected, which negligence they allege and claim was the direct and proximate cause of the injury.

The parties will hereafter be designated as they appeared in the trial court.

The defendant makes seven assignments of error, all of which are argued in the brief under four propositions:

(1) The petition does not allege facts sufficient to constitute a cause of action and is insufficient to support the judgment.

(2) There is not sufficient evidence to support the judgment.

(3) The court's instructions do not state the law of the case.

(4) The testimony of the witness D. M. Bridges, offered in rebuttal, as heretofore set out in this brief was incompetent, irrelevant, not proper rebuttal testimony and prejudicial.

The view we take of this case, it will be necessary to examine the second proposition only, which is that the evidence was not sufficient to support the judgment.

For the purposes of this decision, we will assume, without deciding, that the plaintiff's petition charged actionable negligence, entitling her to recover. That is, that the petition charged the existence of a duty upon the part of the defendant to protect her intestate from injury; that the defendant failed to perform that duty, and that the injury resulted.

The evidence shows that Plowman had gone to the defendant's elevator to deliver a load of grain. That the place fixed for unloading the grain was along the east side of the elevator building. That the place where Plowman was injured was inside the elevator building, but in an open hallway. That in the hallway was the elevator leg enclosing the conveyor belt and metal cups for elevating the grain, and that while the belt and cups were inside the elevator leg, there was an opening about two feet from the floor as wide as the leg and about twenty inches high. That the opening in the elevator leg was for the purpose of making repairs. That the floor where the legs stood was for employes and not for customers, and that the leg stood away from the driveway on the outside a distance of about four feet and inside of the east side of the building about eighteen inches. That Plowman went inside of the main building into the hallway to make inquiry of the employes about when he might unload his grain. That while inside the main building, and in some manner not disclosed, his hand got caught by the elevator belt and cups and he received the injury complained of. That the open hallway was slightly higher than the driveway. That sometimes the employes kept a sack over the opening in the leg to keep the dust out of the hallway, but at the time of the injury the sack had been removed, and one of the employes was down in the basement working with the elevator.

In the case of Sallisaw Cotton Oil Co. v. Holland, 56 Okla. 428, 156 Pac. 174, we find a case in some respects similar to this case. In that case there was an open cotton seed conveyor built in a building, and the plaintiff went there to unload cotton seed, and in some manner, unexplained, fell into the open conveyor and was injured. The court in passing upon the proposition said:

"There are but two propositions involved in this controversy: (1) Was the defendant negligent in not having said cotton seed conveyor covered? (2) If defendant was negligent in not having said cotton seed conveyor covered, was such negligence the proximate cause of the injury suffered by the plaintiff?"

Plaintiff in that case was not an employe and it was held that the Factory Act did not apply. The plaintiff's intestate in the case now under consideration was not an employe, and the Factory Act has no application. In Sallisaw Cotton Oil Co. v Holland, supra, the court said:

"Plaintiff's work did not require him to work with the conveyor, or within its danger zone. Therefore defendant did not owe him the duty of keeping said conveyor covered."

That statement is peculiarly applicable to the instant case. Plowman's work in unloading his grain or in making inquiry about when he could unload the grain, did not by any means bring him within the danger zone of the elevator belt and metal cups. Their danger zone was limited to a very small space. At most, such danger zone was not more than twelve inches square, and was enclosed within the walls of the elevator leg, and was exposed only on one side to the extent of about twenty inches. It was not such a dangerous agency as could escape from its confines. There was no contention that it had broken from the shaft. There was not a chance to come in contact with it unless by some means it was reached through the opening in the leg. All that was necessary for a person to do to protect himself from it was to not put any part of his person into the opening. Just how plaintiff's in-

testate came in contact with it is not explained. We cannot suppose on the one hand that he purposely put his hand into the opening, but on the other hand, it was not shown how the defendant was responsible for him getting his hand in contact with the cups. It is not easy to see how anyone might anticipate that some person might get his hand caught by the cups. The location of the elevator leg was not in a place to be used by customers. The floor round about, in the open hallway, was for the employes and not for customers. The only negligence, if it could be so called, was the fact that the opening in the elevator leg was left unguarded. Would this have been negligence, even if plaintiff's intestate had been an employe so that the Factory Act would apply? Certainly defendant would have owed just as high a duty to guard the opening against the injury of an employe as against the injury of Plowman.

In Dettering v. Levy et al., 114 Md. 273, 79 Atl. 476, it is held:

"In determining whether the location of an unguarded revolving shaft is dangerous, so that it is negligence to fail to guard it, the question is whether the operatives while in the discharge of their duties are likely to come in such close contact with it as to produce injury."

In Gelder v. International Ore Treating Co., 150 App. Div. 184 134 N. Y. Supp. 782, it is held:

"Under Labor Law (Consol. Laws 1909, c. 31) sec. 81, requiring machinery to be properly guarded, the duty to guard only arises when there is a reasonable anticipation of danger."

In Sallisaw Cotton Oil Co. v. Holland, supra, the court said:

"The only negligence on the part of defendant averred in the petition or attempted to be shown by the evidence, is that said cotton seed conveyor was not covered. This brings us to the pivotal question involved in this case. Even if it be admitted that the failure to have said cotton seed conveyor covered was negligence, we are at a loss to see any causal connection between said negligence and the injury received. To entitle plaintiff to recover, it must be shown that the injury received was the result of causal connection with the negligence alleged. The cause that brought about the deplorable accident here complained of is not shown by the evidence. It is a mere conjecture. Was it due to want of care by plaintiff, in attempting to alight from the wagon; or was it due to the action of his mules in throwing him from the wagon? Certainly there is no evidence that the open conveyor was the cause of negligence that brought about the injury complained of."

In St. Louis & S. F. R. Co. v. Hess, 34 Okla. 615, 126 Pac. 760, this court said:

"It is a well-established rule that in a suit for damages for personal injuries, although the defendant may be shown to have been negligent in some manner, yet unless the negligence so shown was the proximate cause of the injury complained of, no recovery can be had on account of such negligence."

In Stephens et al. v. Oklahoma City Ry. Co., 28 Okla. 340, 114 Pac. 611, Mr. Justice Kane, speaking for this court, said:

"The rule seems to be that where the negligent act causes consequences such as in the ordinary course of things are likely to arise, and which might, therefore, reasonably be expected to arise, or which it was contemplated by the parties might arise, liability follows: otherwise not. * * * The reason for the rule is that the law holds a person liable for those consequences only which were the natural and probable result of his negligence, and which therefore ought to have been foreseen and anticipated."

How can it be said in the case at bar that it might reasonably have been anticipated that some customer of the defendant would come into their elevator plant, and by any means get his hand into the opening in the shaft? The opening was plain to be seen, and the belt and cups were performing their functions entirely within the elevator shaft. It certainly cannot be said that it might reasonably have been anticipated that some customer might go into the plant and stumble and fall in such a way as to put his hand into the opening. One of the plaintiff's own witness testified that the floor where the elevator legs stood was for the use of the employes and not for customers. If so, then the defendant owed plaintiff's intestate no duty when he went in there, except to not injure him willfully. But even if the open hallway could be said to be an invitation to come in and look around for the employes, it cannot be said that such invitation extended to the point of inviting him to peer down the elevator shaft, where, if he did, he must of necessity have seen the dangerous agency inside, and realized the danger of putting his hand inside, and taking hold of the cups. Even if the open hallway could be said to be an invitation to come in, still the defendant owed plaintiff's intestate, not a high degree of care to not injure him, but only owed him the duty to have furnished a reasonably safe place. Defendant certainly did not owe such an invitee the duty to fix its hallway so there would not be any possibility of his getting

injured. It did not owe its employes that degree of care.

In St. L. & S. F. Ry. Co. v. Darnell, 42 Okla. 394, 141 Pac. 785, this court said:

"So our inquiry is reduced to this: Is there a. causal connection between defendant's negligence and Darnell's death? If there is not, the verdict is wrong, for it has often been held that, although the defendant may be guilty of negligence, yet to make it liable to a person for injuries received, it must be further shown that the negligence had a causal connection with the injury; that is, that it was the proximate cause of the injury."

Even if the open hole in the elevator leg constituted negligence, there is no proof in the record of causal connection between such negligence and the injury received. It was not shown by the proof, either directly or by any circumstances, that the open hole was the direct and efficient cause of the injury complained of. To warrant a recovery, there must have been some proof fixing the blame upon the defendant for the manner in which Plowman got his hand caught. The proof is silent on this point. Taking into consideration the situation presented it cannot be said that the mere fact that Plowman got hurt speaks for itself and proclaims negligence on the part of the defendant amounting to proximate cause.

Solts v. Southwestern Cotton Oil Co., 28 Okla. 706, 115 Pac. 776 presented a case where an employe fell into an open cotton seed conveyor. It was, in effect, held that in that case the fact of the conveyor being open was not such negligence as would support a judgment for the party injured.

In Patterson v. Seals, 51 Okla. 347, 151 Pac. 591, it was claimed that the failure to have a spark arrester on a smoke stack was negligence. The court said:

"If it be admitted that the failure to have such spark arrester was negligence, the evidence does not show any causal connection between such negligence and the cause of the fire which destroyed said barn. There is no evidence reasonably tending to show that it was negligence to locate the boiler and engine where located, since the plaintiffs in error had a lease upon the lands upon which the same were located; and consequently said location, notwithstanding defendant in error might have objected to the same, was not proof of negligence, causally connected with the fire, which caused the loss for which action is brought. There is no direct evidence as to how the fire originated."

In this case, it cannot be contended, and was not contended, that the close proximity of the elevator. leg with the open hole, to the outside line of the elevator was negligence. It was not contended in the trial of the cause

that the hallway being left open was negligence. If such contentions had been made they would have been groundless. The defendant had a right to locate the elevator leg in such a way as to be of practical use, and this was what had been done. The hole had been left to make repairs to the belt and cups, and in so far as defendant's customers were concerned, it had a right to have the hole unprotected for the reason that the portion of the elevator floor around about the leg was for employes and not for customers. The natural thing for a customer to have done, when desiring to make inquiry of the defendant about conducting their mutual business, would have been to go to the office which was shown to be there in the elevator yard. No person, however thoughtful, could have anticipated that some customer would peer down the open hole looking for an employe. In doing that the customer might have gotten his head too close to the cups and been injured in the head. Could it be said then, that the company was negligent because it did not so construct the leg that it would be impossible for a man to stick his head into the hole? We think not. Would the defendant be any more liable because the customer got his hand hurt when he was peering in the hole looking down the shaft and by some means, for which the defendant was not responsible, lost his balance and stuck his hand into the hole in his effort to recover his equilibrium? We think not.

In Patterson v. Seals, supra, the court declared the law to be as follows:

"In an action for damages, predicated upon negligence, the burden is upon the plaintiff to show by a preponderance of the evidence that there is a causal connection between the negligence averred and the injury suffered."

"In an action for recovery of damages for negligence, if it be shown by the evidence that there was negligence, there can be no recovery unless the evidence, by a preponderance, also shows causal connection between the negligence proved and the damages sustained.

"In an action for damages for negligence, if the evidence fails to show a causal connection between the negligence averred and the damages suffered, the court, upon proper request, should direct a verdict for the defendant."

We think the law declared in that case is applicable here, and since there was no proof as to how Plowman came to get his hand in the hole, in some way fixing the responsibility for such accident upon the defendant, there can be no recovery.

In Chicago, R. I. & P. Ry. Co. v. Barton, 59 Okla. 109, 158 Pac. 250, the claim was made that the company was negligent because the whistle did not blow and the bell did not ring, at the whistling post, and that the train came to the station where plaintiff was injured at too great a rate of speed. It was shown that plaintiff knew of the approach of the train 15 seconds before he was injured. The court, in passing upon the matter of the blowing of the whistle, and the ringing of the bell, quoted from M., K. & T. Ry. Co. v. Gilbreath, 49 Okla. 681, 150 Pac. 539, where it is said:

"It seems to us that in such circumstances negligence cannot be based upon the failure of the engineer to ring the bell or sound the whistle to warn the trackmen of the approach of his train, when it was obvious to him that they had knowledge of the fact."

This is applicable here since the danger of the open hole was obvious to anyone who would look. No warning was necessary. Anyone who had eyes to see could see, through the open hole, the danger of the moving conveyor belt and the cups. It was held in that case that neither the failure to sound the proper alarm nor the too great rate of speed was the proximate cause of the injury. This delinquency on the part of the railroad company might have been negligence, but there was no causal connection shown between the negligence and the injury, and a recovery was denied.

As we see this case, there was a complete failure in the proof on the part of plaintiff to show any causal connection between the negligence charged and the injury received.

This is one of the class of cases so aptly referred to by Commissioner Brewer in St. Louis & S. F. R. Co. v. Hess, 34 Okla. 615 617, 126 Pac. 760, where he said:

"Under the evidence and the amended petition, the court should have directed a verdict for defendant. This is merely one of those cases where the proof fails. It is not every injury for which compensation may be held. Life is strewn with accidents and mishaps for which no one can be held in damages."

This expresses our sentiments in this case. We think the proof on the part of plaintiff failed, in that it did not show any causal connection between the open hole in the elevator shaft and the injury, and the trial judge should have directed a verdict for the defendant.

We recommend that the judgment of the trial court be reversed, and the cause remanded.

By the Court: It is so ordered.