BRUNET v. S. S. KRESGE CO.

No. 7283.

Circuit Court of Appeals, Seventh Circuit.

Nov. 1, 1940.

Rehearing Denied Nov. 29, 1940.

714

Burt A. Crowe, of Chicago, Ill., for appellant.

Samuel A. Rinella, of Chicago, Ill., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and BRIGGLE, District Judge.

SPARKS, Circuit Judge.

The defendant appeals from a judgment for $5,000 rendered against it in an action for damages for injuries sustained as the alleged result of its negligence in permitting a stairway in its store to become and remain slippery from water and snow, causing appellee to fall. Appellant moved for a directed verdict at the close of appellee's evidence, and again at the close of all the evidence, and here contends that the court erred in denying its motion.

The injury as to which complaint is made occurred in February, 1939. The evidence showed that appellee, with a friend, entered a store maintained by appellant at about eleven forty-five for the purpose of having lunch there. The store was a large one, and during the noon hour many people came and went. The stairway in question was located a few feet inside the front door. On the day of the accident it was snowing, and many people had tracked in slush and snow so that the floors and stairs were wet and slippery. Appellee and her friend, finding no places for them to have lunch on the main floor, started down the stairs to the basement where there was another lunchroom. Appellee was wearing galoshes over her shoes. As she started down the steps, noticing that they were muddy and slippery, she took hold of the banister to keep from falling, but as she reached the fourth or fifth step from the top, her foot slipped and she fell all the way to the landing, striking her head and becoming unconscious. First aid was rendered in the store, after which the manager took her to their physician for examination and treatment. He took two X-ray photographs of her head and advised her to go home and remain in bed with ice packs on her head. She returned to work the following day, but suffered so from headaches and nervousness that she felt unable to work, and thereafter remained at home for the next two and a half months, in bed part of the time, and under the care of her physician at all times. She returned to work in May for about two months until her vacation of a month, after which she again returned and remained until Christmas when she quit. She was not working at the time of the trial the latter part of January. While she was working she earned sixteen dollars a week. Her bill for medical services up to the time of trial amounted to seventy-five dollars.

The sole charge of negligence here is that appellant permitted its stairway to become and remain slippery and wet and in a dangerous condition. There is no charge of any defect in the stairs, or that they were not properly lighted at all times. The slush and snow were not placed there by the act of appellant, but were tracked in by customers.

After a careful reading of the record in this case, we are convinced that it does not disclose such negligence on the part of appellant, and freedom from negligence on the part of appellee, as to justify the judgment entered in favor of the latter, and that appellant's motion for a directed verdict should have been sustained. We think it must be conceded that storekeepers are not insurers of the safety of their patrons, but are required to use only "ordinary care to make the premises as reasonably safe as may be consistent with the practical operation of the business." Dire v. Balaban & Katz, Inc., 241 Ill.App. 199.

Confronted by facts somewhat similar to those of the case at bar, the Illinois Appellate Court in Murray v. Bedell Co., 256 Ill. App. 247, held that the trial court should have directed a verdict in favor of the defendant. The fall there occurred in the vestibule instead of on the stairway just inside the entrance as here, but we do not consider that a significant distinction. The court there seems to have based its decision on the fact of comparative knowledge of the parties, saying,

"From the testimony of the plaintiff it is apparent that the danger, if any, was clearly evident to her, as well as the defendants, and that she was aware of the condition and of the possibility of sustaining a fall before she undertook to pass over and along the floor space of the vestibule.

"The condition described by the witnesses is one that is not only not unusual, but is customarily to be found on such days as described in the testimony, in vestibules of this character and the sidewalks and the premises surrounding entrances to public places. * * *

"In the case at bar the plaintiff was as well apprised of the condition existing in the vestibule as the defendant, and should be held to as high a degree of care for her own safety as would be required of the defendant."

This conclusion is consistent with the general rule, as stated by the Illinois Supreme Court in Calvert v. Springfield Light Co., 231 Ill. 290, 83 N.E. 184, 185, 14 L.R.A.,N.S., 782, 12 Ann.Cas. 423, where the court said:

"The law is well settled that an owner or occupant of land, who by invitation, express or implied, induces or leads others to go upon premises for any lawful purpose, is liable for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist without timely notice to the public, or to those who are likely to act upon such invitation, and if there are hidden dangers upon the premises, he must use ordinary care to give persons rightfully upon the premises warning thereof * * *."

It is obvious in the case at bar that nothing was hidden from appellee, that she was well aware of the slippery and wet condition of the stairway as she started to descend it. She stated that she took hold of the banister as she started down because she realized that there was a possibility of falling. She presumed that her own galoshes were wet as she entered the store, having walked through the slush and snow, and she could see that there was slush and snow on the stairs tracked in by other people.

Appellee sought to prove by the testimony of a number of witnesses who had used the steps about the time of the accident how dangerously slippery they were, a condition admitted by the assistant manager who stated that he had given orders to the porter shortly before the time of the accident to mop them. There was the positive testimony of that porter that he had mopped them, "just before I went to lunch * * * around 11:15, between 11:00 and 11:30," as opposed to the testimony of appellee's witnesses, that the stairs were very slippery, and that two of them, standing right at the foot of the stairs for a half hour before the accident, had not seen anyone mopping them.

We think the facts as proved by appellee fail to disclose such a lack of reasonable and ordinary care in the maintenance and supervision of the premises as to render appellant liable for her accident. In the words of the Circuit Court of Appeals for the Tenth Circuit in another case involving a fall on rather dark stairs wet from tracked-in water:

"If what was shown in this case was sufficient to permit recovery, it would require store owners to have a mopper stationed at the doors on rainy days for the sole purpose of mopping up after every customer entering or leaving the premises. Every store owner would be required to be an insurer against such accidents to public invitees who came in on rainy days with wet shoes." Sears, Roebuck & Co. v. Johnson, 91 F.2d 332, 339.

Judgment reversed, and cause remanded with directions to dismiss on the merits.

On Petition for Rehearing.

PER CURIAM.

Upon petition for rehearing appellee asserts that not only were we in error in not affirming the decision of the trial court on the merits, but also that we erred in our direction to that court to dismiss on the merits. We find no question raised as to the merits which was not discussed in our original opinion, hence we do not now discuss the questions as to them.

As to the direction to dismiss, appellee contends that in not at least remanding for new trial, we deny her the right of trial by jury guaranteed by the Constitution of the United States. She relies upon two decisions of the United States Supreme Court in support of her contention, Slocum v. New York Life Ins. Co., 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879, Ann.Cas.1914D, 1029, and Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 57 S.Ct. 809, 81 L.Ed. 1177. In the Slocum case, the Court laid down a very general rule that in case of the reversal of a judgment entered on a verdict which the appellate court found should be vacated for insufficiency of evidence to support it, the direction of the appellate court should be for new trial rather than for the entry of a judgment for the defendant notwithstanding the verdict. This rule was subsequently modified by the same court in Baltimore & Carolina Line v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636. The Court based its express modification of the earlier ruling on a distinction which it found between the two cases, in that in the earlier, there had been no reservation of the ruling on the motion for a directed verdict, whereas in the Redman case, the ruling had been expressly reserved until after verdict when the court ruled on the sufficiency of the evidence. The Supreme Court held that this presented a question of law rather than a question of fact, and that the Circuit Court of Appeals for the Second Circuit was in error in remanding for a new trial instead of directing dismissal of the cause on the merits. This distinction was adverted to in the Aetna case, and the decision in the Redman case was held inapplicable on the ground that there had been no reservation of ruling.

Since the decision of the three cases above, the adoption of the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, has, in effect, done away with the distinction between cases as to whether or not there was an express reservation of ruling. Rule 50(b) provides: "Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within 10 days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict * * *. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. * * * *"

In commenting on this rule, Moore's Federal Practice, Vol. 3, p. 3110, says: "The only change the Rule effects in the common law practice is to make the reservation automatic. Although there is some English authority that consent of the parties and/or the jury was necessary at common law, this authority was not considered controlling. * * *"

█ Here, motion was duly made for the directed verdict, which was taken under advisement and later denied. Without the new Rule, this would undoubtedly bring the case within the purview of the Slocum case, and we would be required to remand for new trial. However, within ten days after reception of the verdict, appellant filed two motions, one to set aside the verdict and for new trial, and the other to set aside the verdict and enter judgment notwithstanding the verdict. Both were duly denied, and judgment entered on the verdict. We think this action of the defendant preserved its rights under the Rule, so that it is now entitled to direction of a judgment without new trial. When the Supreme Court decided the Redman case, it ordered that the judgment of the Court of Appeals be modified by substituting a direction for a judgment of dismissal on the merits in place of the direction for a new trial. It had previously stated that this judgment of dismissal would be the equivalent of a judgment for the defendant on a verdict directed in its favor. It appears that the Rule seeks to extend and crystallize the practice prescribed in the Redman case, hence our directions for dismissal on the merits.

Petition for rehearing denied.